IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAMJASS PERSAD | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CATHERINE W. COLWIN, | : | |
| Acting Commissioner of | : | |
| Social Security | : | NO. 11-3506 |

REPORT AND RECOMMENDATION

JACOB P. HART                                                                                         DATE: 10/21/2013
UNITED STATES MAGISTRATE JUDGE

      Ramjass Persad brought this action under 42 U.S.C. § 405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Supplemental Security Income. For the reasons that follow, I recommend that Persad's Request for Review be denied, and judgment granted in favor of the Commissioner.

I.     Factual and Procedural Background

      Persad was born on January 24, 1960. Record at 114. He completed the twelfth grade in school. Record at 137. He worked in the past as an order picker clerk, a silk-screen printer, and a materials handler. Record at 128.

      On July 22, 2008, Persad applied for Supplemental Security Income, alleging disability since October 1, 2006, as a result of diabetes, arthritis, degenerative disc disease, and neck and knee pain. Record at 114, 127. Persad's application was denied on January 28, 2009. Record at 57. Persad then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 64. A hearing was held on February 3, 2010. Record at 26.

On March 24, 2010, the ALJ issued a written decision denying benefits. Record at 12. The Appeals Council denied Persad's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 1. Persad then filed this action.

II.  Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Richard v. Perales, 402 U.S. 389 (1971). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra, at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). A reviewing court must also insure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a twelve-month period." 42 U.S.C. § 423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider our work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirements in s 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are disabled.

20 CFR § 404.1520 (references to other regulations omitted).

III.     The ALJ's Decision and Persad's Request for Review

In his decision, the ALJ determined that Persad suffered from the severe impairment of diabetes, as well as disorders of the right knee, low back, right shoulder and cervical spine. Record at 14. He did not find that any impairment, or any combination of impairments, met or medically equaled a listed impairment. Record at 15.

The ALJ decided that Persad retained the RFC to engage in sedentary work which (a) provided a sit/stand option; (b) did not require climbing, balancing, kneeling, pushing or pulling with the right leg or foot; (c) required only occasional stair climbing, stooping or crouching (d) did not involve exposure to hazards such as moving machinery or unprotected heights; and (e) involved working on flat surfaces only. Record at 16. Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ determined that Persad could work as a surveillance system monitor, optical polisher, credit checker or charge account clerk. Record at 20. He concluded, therefore, that Persad was not disabled.

Persad argues in his Request for Review that the ALJ erred in failing to correctly analyze the medical records with respect to his back impairments. Specifically, he points to the MRIs of his lumbar spine, and records from a May 4, 2008, emergency room admission for back pain, as well as the treatment records from his orthopedist, chiropractor, and pain specialist. He also maintains that the ALJ did not give appropriate weight to his subjective complaints of pain.

IV.      Discussion

A.       The Medical Evidence

1.       The Lumbar MRIs

The record contains three reports of MRIs taken of Persad's lumber spine. The first two were dated March 8, 2007, and June 3, 2008. Record at 430, 447. The third MRI was taken on

August 6, 2009, days after Persad sustained a fall in the home which resulted in a compression injury at T12-L1. Record at 756. It is not relevant to this case, because Persad's insured period ended on December 31, 2008. Record at 12.

The March 8, 2007, MRI showed degenerative disc disease at L4-5 and L5-S1. Record at 430. It also showed "annular bulging, moderate left paramedian disc herniation, bilateral facet arthrosis and ligamentum flavum hypertrophy at L4-5" which caused encroachment upon the L54 and L5 nerve roots. Id. The June 3, 2008, MRI showed: "severe disc degeneration and mild disc bulging at L4-5 with severe foraminal narrowing on the left and moderate foraminal narrowing on the right." Record at 447.

As to these findings, the ALJ wrote: "In March of 2007, MRIs of the cervical and lumbar spine revealed degenerative disc disease … An MRI of the lumbar spine in June of 2008 revealed degenerative disc disease and mild disc bulging at L4-L5 with foraminal narrowing, however, there was no stenosis or nerve root compression indicated." Record at 18.

Persad argues that the ALJ minimized the findings of the MRIs by ignoring the fact that the first study reported encroachment upon his nerve roots. It is not clear what to make of the fact that this encroachment was not mentioned in the second study. However, it could be argued that the ALJ minimized the MRI findings by failing to note that both the L4-L5 disc degeneration and the left foraminal narrowing were described as "severe."

Nevertheless, it is obvious that the ALJ did credit, to a great extent, the evidence that Persad suffered from a lumbar condition capable of causing him significant pain. Mario Arena, MD, was the orthopedic surgeon who treated Persad on behalf of his workers' compensation carrier in the June 8, 2006, accident which caused his knee condition. In a report dated February 14, 2008, Dr. Arena found Persad capable of work at the medium level, although he specified

that he was not considering the effect of the back impairments, because they were not caused by a work accident. Record at 952-955. Although the ALJ wrote that he gave Dr. Arena's report "great weight," he actually reached the much more conservative conclusion that Persad could engage in a limited range of sedentary work. Since Dr. Arena was evaluating Persad's knee condition only, it can easily be inferred that the difference between his medium work recommendation and the ALJ's sedentary work is attributable to Persad's back impairment.

Thus, the ALJ considered the MRI reports, and obviously took them into account to a great extent in developing his RFC assessment. In this context, it is not clear that his failure to mention the nerve encroachment had any effect on his conclusion that Persad was not disabled. Of course, it could be significant in the context of an overall minimizing of the most serious medical findings, but, as discussed below, it does not appear that this occurred.

2. <u>The Emergency Room Records</u>

The ALJ noted that "In May of 2008, the claimant presented with back pain to Abington Memorial Hospital." Record at 18. He also noted that at that time, Persad denied any extremity weakness. <u>Id</u>. Persad argues that the ALJ erred in failing to consider more of the observations in the hospital notes, such as that he described his pain at 7/10 upon initial examination. Record at 432. However, nothing in the emergency room records supports the existence of limitations in excess of those found by the ALJ.

Persad was admitted to the emergency room at 11:05 a.m., treated with Percocet and Diazepam, and discharged at 12:09 p.m. – one hour later – with a diagnosis of sciatica. Record at 435-436. There were no other ER visits. The fact that the ER doctor, Dr. Philippe de Kerillis, found paravertebral muscle tenderness in the lumbar and sacral back, and a positive straight leg raising test result, confirms Persad's claim that he suffered from lower back pain. Record at 435.

5

However, as discussed above, the ALJ acknowledged Persad's lumbar disorder as a severe impairment, and accommodated it in his RFC by limiting him to less than the full range of sedentary work. The Abington Memorial Center ER records do not show anything which would lead to a different result.

3.  The Chiropractor Notes

The ALJ wrote: "The claimant was noted as improving with chiropractic treatment." Record at 18. He also referred to chiropractic therapy as part of the "conservative treatment" Persad received for his back impairment. Record at 17. He did not, however, otherwise discuss the evidence submitted by Nicholas Carone, DC, Persad's treating chiropractor.

As Persad has pointed out, a chiropractor is not an "acceptable medical source" under 20 CFR § 404.1513(d). However, evidence provided by a chiropractor is appropriately used to show the severity of a claimant's impairments, and his ability to function. SSR 06-3p. It may even be weighed more heavily than evidence from an "acceptable medical source", if the chiropractor has seen the claimant more often or has provided better supporting evidence. Id. Persad argues that Dr. Carone's notes showed that his back pain was exacerbated by sitting, standing, bending and climbing stairs, and that it was relieved by lying down and by medication.

In a report dated August 28, 2008, Dr. Carone found that Persad had normal reflexes and muscle tone, but some hypoesthesia [impaired tactile sensibility] at L5 which was "forgotten during activity." Record at 450. He presented with an antalgic gait and a positive straight leg raising test, bilaterally. Id. Persad told Dr. Carone that his lower back pain occurred between three-fourths and all of the time when he was awake, and that it prevented him from carrying out his activities of daily living. Id.

In a later report, dated May 26, 2009, Dr. Carone wrote that Persad said his pain occurred between one fourth and one half of the time when he was awake. Record at 463. He rated the pain between 1-5 on a 10 point scale. Id. Persad also told Dr. Carone that his improvement since the June 8, 2006, work accident was 50%. Record at 464. Chiropractic treatment allowed him "to participate in minor household chores, yardwork, and some sexual activity." Id.

Thus, the ALJ was accurate in reporting that the records showed improvement with chiropractic treatment. Further, the ALJ largely accommodated the aggravation caused to Persad by "sitting, standing, bending and climbing stairs" by limiting him to sedentary work with a sit/stand option, and only occasional stair climbing, stooping or crouching (as well as no climbing, balancing, kneeling, or pushing/pulling with his right leg). Record at 16. It is clear, therefore, that although the ALJ did not find the limitations indicated by Dr. Carone to be disabling, and although he did not discuss the notes in detail, he actually included Dr. Carone's information in his RFC assessment.

4.  Dr. Petolillo's Records

John Petolillo Jr., DO, was Persad's treating orthopedist after the relevant time period. He submitted two RFC assessments, dated October, 2009, and December, 2009, in which he indicated that Persad could sit for less than two hours total, and could walk or stand for less than two hours, in an eight-hour workday. Record at 910, 931. The ALJ discussed Dr. Petolillo's findings, but gave them little weight "as the assessment includes limitations resulting from" Persad's August 2, 2008, compression fracture. Record at 18.

7

Persad maintains that the ALJ erred in failing to consider treatment notes from Dr. Petolillo which were prepared prior to his compression fracture. He argues that examinations on April 14, 2009, and May 12, 2009, related to his condition prior to December 31, 2008, his date last insured. Record at 571.

Here again, however, even if it is assumed that the reports pertain to Persad's condition during the relevant time period, they do not necessarily indicate disabling limitations. On April 14, 2009, Dr. Petolillo noted an antalgic gait and tenderness in the lumbar spine, as well as a positive right straight leg raise test. Record at 572-3. However, he only recommended that Persad undergo magnetic resonance treatment and return in one month. Record at 573. He wrote that Persad was "unable to perform the duties of their [*sic*] normal job at this time." Record at 574. On May 12, 2009, he also recommended a pain management evaluation for Persad's lumbar spine. Record at 569.

Thus, Dr. Petolillo's findings prior to August 2, 2009, are essentially consistent with the records from Persad's insured period, which confirm that he suffered from lumbar back pain as a result of his degenerative disease, but do not compel a finding of disability. It can not be said that the ALJ erred in failing to consider them, particularly since they are outside of the relevant period.[1]

5.  Dr. Madnani

Finally, Persad maintains that the ALJ should have considered notes from Sanjay Madnani, MD, the pain specialist who treated him with cortisone shots to the lumbar spine between June, 2009, and January 12, 2010. Record at 937-945. This treatment did not begin until twelve months after the relevant period. Therefore, even though the notes address the

---

[1] Persad has not raised any issue in his Request for Review pertaining to the two RFC assessments made by Dr. Petolillo on December 23, 2009, and January 12, 2010. Record at 910, 935.

lumbar condition from which Persad suffered during the relevant period, they can not possibly reflect his condition during that time. For that reason, the ALJ did not err in failing to consider them.

B.   The ALJ's Credibility Assessment

Because the ALJ acknowledged that Persad was limited by his back, neck, shoulder and knee impairments, but did not find him disabled, his credibility determination as to the extent of the pain and limitation to which Persad testified was clearly crucial to his decision.

An ALJ is empowered to evaluate a claimant's credibility. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983). Even if an ALJ concludes that a medical impairment exists which could reasonably cause the symptoms alleged, he must evaluate the intensity and persistence of the symptoms, and the extent to which they affect the claimant's ability to work. 20 CFR § 404.1529(b) and (c); Hartranft v. Apfel, 181 F.3d 358 (3d Cir. 1999). In doing so, he may consider such factors as the internal consistency of the claimant's own statements, the medical evidence, and the claimant's medical treatment history. 20 CFR § 404.1529.

Persad testified at the hearing that he could only sit for half an hour at a time, spent most of his day watching television, and frequently drowsed during the afternoon because of his sedating pain medication. Record at 41-44. The ALJ acknowledged that Persad's medical impairments could reasonably cause the symptoms alleged, but did not find Persad's representations in this regard fully credible. Record at 17.

In support of this conclusion, the ALJ noted that Persad also testified that in 2008 he could walk one mile with breaks, standing for 30 minutes at a time, and lift 15-20 pounds. Record at 17, 40, 41. In the function report Persad completed in August, 2008, he indicated that he bathed and dressed independently, and that he helped with "minor household chores" such as

9

dishes and laundry. Record at 17, 154, 156. He was able to drive and use public transportation, and he left the house daily. Record at 17, 157.

The ALJ also wrote:

> In terms of the claimant's alleged limitations from his physical impairments of his date last insured, although the records indicated degenerative changes in the claimant's back, he received conservative treatment including chiropractic therapy. The records further indicated that as of the claimant's date last insured, he was on medication for his diabetes, received no treatment for his right shoulder pain, and showed improvements with a right knee arthroscopic procedure. The records did not support the claimant's allegations of needing to nap during the day.

Record at 17.

Thus, the ALJ evaluated Persad's testimony with reference to his own statements, his treatment history, and the medical evidence, as directed by 20 CFR § 404.1529. Also, as previously noted, the ALJ obviously credited Persad's claims of pain and limitation to a great extent, or he would not have found him capable of only sedentary work, with a sit/stand option, and few postural requirements. Accordingly, there is no apparent error in the ALJ's credibility assessment.

V.  Conclusion

In accordance with the above discussion, I make the following

**RECOMMENDATION**

AND NOW, this 21st day of October, 2013, it is RESPECTFULLY RECOMMENDED That the Plaintiff's Request for Review be DENIED and that judgment be entered in this matter in favor of the Defendant.

BY THE COURT:

/s/Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE